

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-13-00046-CV

**IN THE ESTATE OF** Anita I. **FORISTER**, Deceased

From the County Court, Karnes County, Texas
Trial Court No. 2913-12
Honorable Jim Scanlan, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: November 20, 2013

AFFIRMED

This is an appeal from the trial court's order granting James Floyd Bowman Jr.'s motion to dismiss a bill of review filed by appellants Frances Bupp, Martha Berglund, and Evelyn Martin (collectively "Bupp"). Bowman alleged Bupp lacked standing to bring a bill of review challenging a prior judgment declaring Bowman the sole heir of the estate of Anita I. Forister. On appeal, Bupp contends the trial court erred in granting Bowman's motion based on an absence of standing.

### BACKGROUND

The basic facts in this case are undisputed. The dispute centers around the interpretation of certain statutes in the Texas Probate Code and their relationship to heirship in an intestate estate.

Anita I. Forister died intestate. Forister was not survived by a spouse, children, parents, or siblings. One of Forister's brothers, Preston Alvin Puckett, and his wife, Juanita Wellman, had a

child named James Preston Puckett. After Preston and Juanita divorced, Juanita married Elby Bowman. Elby adopted James and changed his name to James Floyd Bowman Sr. James Sr. married and had two children, but only one survived, James Floyd Bowman Jr. Thus, James Jr. is the biological grandson of Preston and the biological great-nephew of Forister.

On September 20, 2010, based on his status as Forister's great-nephew, the trial court entered a judgment of heirship, awarding James Jr. a hundred percent of Forister's estate. Thereafter, Bupp filed a bill of review challenging the heirship. Bupp claims an interest in the Forister estate by virtue of an assignment from James Hooks, an alleged half-cousin to Forister. Hooks assigned twenty-five percent of any interest he might have in Forister's estate to Bupp.

James Jr. filed a motion to dismiss the bill of review, contending Bupp lacked standing to bring the bill because Hooks had no interest in Forister's estate. The trial court granted James Jr.'s motion to dismiss, concluding James Jr. was the sole heir to Forister's estate. Thereafter, Bupp perfected this appeal.

## ANALYSIS

On appeal, Bupp contends the trial court erred in concluding Bupp had no standing to bring a bill of review challenging the prior judgment of heirship in favor of James Jr. Bupp, relying on section 40 of the Texas Probate Code, argues that because James Jr. is the son of an adoptee, as opposed to the actual adoptee, he cannot inherit from Forister. Thus, according to Bupp, James Hooks, as a half-cousin of Forister, has an interest in the Forister estate, and twenty-five percent of his interest was transferred to Bupp, giving Bupp standing.

### *Standing–Applicable Law and Standard of Review*

"Standing is a constitutional prerequisite to suit." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). Standing focuses on who may bring suit. *In re Estate of Velasco*, 214 S.W.3d 213, 215 (Tex. App.—El Paso 2007, no pet.) (citing *Waco Indep. Sch. Dist. v. Gibson*,

22 S.W.3d 849, 851 (Tex. 2000)). A court lacks jurisdiction over a plaintiff's claim if the plaintiff lacks standing to assert the claim. *Heckman*, 369 S.W.3d at 150. For a plaintiff to have standing, she must have suffered a "concrete injury" and a "real controversy" must exist between the parties such that it can be resolved by the court. *Id.* at 154. A plaintiff is required to affirmatively demonstrate the trial court has jurisdiction, and therefore, the plaintiff must demonstrate she has standing. *Id.* at 150.

In a probate proceeding, a party whose standing has been challenged must prove she has an interest in the estate. *Velasco*, 214 S.W.3d at 216 (citing TEX. PROB. CODE ANN. § 10 (West 2003)). A party is interested in the estate if she is an heir, devisee, spouse, creditor, or any other person with a property right in, or claim against, the estate. *Velasco*, 214 S.W.3d at 215 (citing TEX. PROB. CODE ANN. § 3(r)). In 1947, the supreme court explained the type of interest a party must demonstrate to establish standing in a probate proceeding:

> [T]he term "person interested" has a well-defined but restricted meaning. The interest referred to must be a pecuniary one, held by the party either as an individual or in a representative capacity, which will be affected by the probate or defeat of the will. An interest resting on sentiment or sympathy, or any other basis other than gain or loss of money or its equivalent, is insufficient. Thus the burden is on every person . . . to allege, and, if required, to prove, that he has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefited [sic], or in some manner materially affected . . . .

*Logan v. Thomason*, 202 S.W.2d 212, 215 (Tex. 1947).

In reviewing a trial court's order on a motion to dismiss for lack of standing, we consider the issue as we would in a plea to the jurisdiction. *See Brown v. Todd*, 53 S.W.3d 297, 305 n. 3 (Tex. 2001). If a plea to the jurisdiction challenges jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004). If the evidence creates a fact question regarding the jurisdictional issue, then the trial

court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact issue on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. We review the trial court's ruling de novo. *Id*. at 226.

*Application*

Section 38 of the Texas Probate Code governs persons who take upon intestacy. *See* TEX. PROB. CODE ANN. § 38 (West 2003). As noted above, Forister died intestate, i.e., without a will. Thus, we look to section 38 of the Probate Code to determine who inherits. Forister left no surviving spouse, so her children or descendants thereof would inherit. *Id.* § 38(a)(1). However, there were no surviving children nor descendants of such children, so her parents would then inherit. *Id.* at § 38(a)(2). Forister's parents predeceased her, and thus the estate would pass to her siblings or their descendants. *Id.* at § 38(a)(3). None of Forister's siblings survived her, so an inheritance would pass to her siblings' descendants. *Id.*

The record establishes that only one of Forister's siblings, Preston A. Puckett had a child. Preston and his wife Juanita had a son, James Preston Puckett. However, Preston and Juanita divorced. After the divorce, Juanita remarried Elby Bowman. Elby Bowman adopted James Preston Puckett and the couple changed his name to James Bowman Sr. James Sr. had one son who survived Forister, James Jr. It is undisputed that James Jr. is the biological grandson of Forister's brother Preston, making James Jr. the biological great-nephew of Forister. James Jr. is, therefore, Forister's closest surviving relative based on the priority set out in section 38 of the Probate Code. *See id.* Accordingly, pursuant to section 38(a)(3) of the Probate Code, James Jr. is entitled to inherit Forister's estate in its entirety. *See id.*

Bupp, however, contends James Jr. is not Forister's heir and not entitled to inherit, making Hooks, her assignor, the only legal heir to Forister's estate. Bupp contends this case is not governed by section 38 of the Probate Code, but rather solely by section 40 of the Probate Code, which governs inheritance by and from an adopted child. *Id.* § 40. Pursuant to section 40, an adopted child and the child's descendants inherit from the adoptive parent or parents. *Id.* Moreover, an adopted child is entitled to inherit from his natural parents. *Id.* Bupp argues that because the Legislature failed to provide that an adopted child "and his descendants" are entitled to inherit from the natural parents, descendants of adopted children, such as James Jr., are excluded from inheriting from the natural or biological line. In support of her argument, Bupp relies upon statutory construction cases, specifically the mandate that words excluded from statues must be presumed to have been excluded for a reason. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *see also* 24 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 391.02[2] (2013) (stating descendants of adopted child probably have no right to inherit through natural parents because they are not mentioned in section 40 of Probate Code).[1] Bupp also relies on a 1951 case from Wisconsin, *In re Ries' Estate*, 49 N.W.2D 483 (Wis. 1951).

We hold Bupp's decision to rely solely on a single sentence in section 40 of the Probate Code is misplaced. We begin by noting the clear purpose of section 40 is to vest additional rights in an adopted child and his descendants, not limit them. *See* TEX. PROB. CODE ANN. § 40. Based on our reading of section 40, we hold the Legislature has provided that adopted children *and their descendants* inherit from their adoptive *and* biological families. This interpretation is supported by the last sentence of section 40 as it relates to other provisions in the Probate Code:

> The presence of this Section specifically relating to the rights of adopted children
> shall in no way diminish the rights of such children under the laws of descent and

---

[1] Dorsaneo provides no authority for his statement, and states it in terms of probability, not certainty. *See* 24 DORSANEO, § 391.02[2]

distribution or otherwise, which they acquire by virtue of their inclusion in the definition of "child" which is contained in this Code.

*Id.* With regard to paternal inheritance, as stated in section 42 of the Probate Code, a child is defined as the child of his biological father if the child is born under circumstances set forth in section 160.201 of the Texas Family Code. *Id.* § 42. Section 160.201 of the Family Code provides that a child is the child of his biological father if, among other things, the father was married to the mother of the child and the child was born during the marriage. TEX. FAM. CODE ANN. § 160.201 (West 2008); *see id.* § 160.204(a)(1). According to section 42, a child born under such circumstances "and his issue" . . . "shall inherit from his father and from his paternal kindred, both descendants and ascendants, and collaterals in all degrees." TEX. PROB. CODE ANN. § 42.

The undisputed record establishes James Sr. was born during the marriage of Preston and Juanita, establishing him as a "child" under section 160.201 of the Family Code.[2] Thus, pursuant to Section 42 – globally entitled "Inheritance Rights of Children" – James Sr. "and his issue" "shall inherit from his father and from his paternal kindred." And, according to the very language of section 40, that section cannot diminish the rights of a "child" under the laws of descent and distribution, i.e., sections 38 and 42.[3] Thus, we hold that based on a plain reading of section 40, the very section relied upon by Bupp, it cannot be used to diminish the rights of James Sr. *and his progeny*, i.e., James Jr., to inherit pursuant to sections 38 and 42.

Our interpretation of section 40 is supported by the rules of statutory construction, which require us to consider the statute as a whole, rather than its isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). We cannot give one provision meaning out of

---

[2] In effect, James Sr. was a "child," i.e., born during the marriage of his biological parents, who was subsequently adopted by his stepfather.

[3] Sections 38 and 42 dovetail in that section 42 states that a child, such as James Sr. *and his issue*, inherit from their paternal kindred, and section 38 does not exclude adopted children or their descendants from the intestacy line. *Compare* TEX. PROB. CODE ANN. § 38 *with* TEX. PROB. CODE ANN. § 42.

harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. *Id.* The supreme court has held we must "presume that the Legislature intends an entire statute to be effective and that a just and reasonable result is intended." *Id.* (citing TEX. GOV'T CODE ANN. § 311.021(2), (3) (West 2013)). To adopt the interpretation of section 40 asserted by Bupp, we would have to ignore the last sentence of section 40 and the clear intent expressed therein that nothing in section 40 should be interpreted to diminish an adopted child's rights. Bupp's interpretation would limit an adopted child's rights by virtue of limiting the rights of the adopted child's progeny as expressed in other provisions of the Probate Code.

We also find Bupp's reliance on section 40 misplaced because there is nothing in section 38 that excludes adopted descendants from the line of intestacy. TEX. PROB. CODE ANN. § 38. Bupp contends James Jr. may not inherit from through his biological line because section 40 does not include language that descendants of an adopted child may inherit through the biological line. However, section 38 is silent with regard to the inheritance rights of an adopted child and his descendants, referring only to brothers and sisters of the intestate and their descendants. The section does not limit the right of an adopted child's progeny to inherit by intestacy. *Id.*

Finally, and as James Jr. points out, section 49 of the Probate Code sets out what information must be provided to the probate court in a suit to declare heirship. TEX. PROB. CODE ANN. § 49. Notably, the adoption status of the descendant seeking heirship is not required. *See id.* If Texas law ousted adopted descendants from inheriting from their biological ascendants, as Bupp claims, it would seem that information concerning the existence of an adoption would be required in an heirship proceeding. The absence of such a requirement supports a holding that adopted descendants are not excluded by section 40, or any other section of the Probate Code, from the line of descent for purposes of inheritance.

Moreover, Bupp's assertion that we should not look beyond the language she relies upon in section 40 is contrary to the long-standing principle of *in pari materia*. This principle provides that where two or more separate statutory provisions pertain to the same subject, appellate courts should attempt to construe the provisions so that the statutes will be in harmony. *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 410–11 (Tex. App.—Dallas 2010, pet. denied). Statutes are *in pari materia* if they concern the same subject matter, relate to the same person or class of persons, or have the same object or purpose. *In re J.M.R.*, 149 S.W.3d 289, 292 (Tex. App.—Austin 2004, no pet.). Statutes that are found to be *in pari materia* are construed together, and if possible, conflicts between the statutes are harmonized. *Id.*

Chapter II of the Probate Code, which contains the three major provisions of the Probate Code considered by this court – 38, 40, and 42 – is entitled "Descent and Distribution," and was enacted to determine the proper distribution of property following the death of persons with and without wills. Sections 38, 40, and 42, were all enacted, similar to their current forms, by the 54th Texas Legislature in the same session and act. *See* Act of April 4, 1955, 54th Leg. R.S., ch. 55, 1955 Tex. Gen. Laws 100–02, 105. All three provisions became effective January 1, 1956. Thus, when it enacted section 40, the Legislature was aware of the provisions in sections 38 and 42, which do not exclude descendants of adoptees from inheriting. Given the Legislature's awareness of these other provisions, and the inclusion of the last sentence of section 40, it seems the most reasonable interpretation of the rights of the descendants of adoptees is that they are not to be excluded from the rights of inheritance. To conclude otherwise would require reinterpretations of sections 38, 42, and the last sentence of section 40. Our holding, that descendants of adoptees are

not precluded by section 40 from inheriting from their biological ascendants, is the most harmonious interpretation given the language in the other relevant provisions of the Probate Code.[4]

As to Bupp's reliance upon the 1951 Wisconsin case to support her interpretation of section 40, we find it is misplaced. In *Ries' Estate*, an adopted child sought to inherit from her biological great-aunt who died intestate. 49 N.W.2d at 484. In that case, another heir claimed the adopted child was removed from the great-aunt's line of descent by virtue of her adoption. *Id.* This is, indeed, similar to the argument Bupp makes in this case. However, in that case, the statute at issue specifically provided that adoption "completely change[d] the legal status of the adopted person from that of a child of the natural parents to that of child of the adoptive parents," completely freeing the adopted person from all legal obligations to the natural parents and vice versa. *Id.* The court held it could find no other statute that would preserve the great-niece's right of inheritance. *Id.* at 485.

This case in inapposite because Texas has no similar statute cutting off the rights of an adopted child or his descendants. And, in fact, sections 38 and 42 clearly permit adopted children and their progeny to inherit from the biological bloodline. So, unlike Wisconsin in 1951, Texas has other statutes that preserve a right of inheritance for those like James Sr. and James Jr.

Based on our analysis of section 38, 40, 42, and 49 of the Probate Code, we hold the adoption of James Sr. did not cut off the inheritance rights of his progeny, and therefore, James Jr. is the sole heir of Forister's estate. Because James Jr. is the sole heir of the estate, it is unnecessary to determine whether, in fact, Hooks had any interest in Forister's estate such that his assignment

---

[4] Although section 49 of the Probate Code is contained in a different chapter of the Probate Code, specifically, Chapter III, entitled "Determination of Heirship," it too was enacted by the 54th Texas Legislature in the same session and act as section 38, 40, and 42 of the Probate Code. *See* Act of April 4, 1955, 54th Leg. R.S., ch. 55, 1955 Tex. Gen. Laws 100–02, 105. All four provisions became effective January 1, 1956. And, the Legislature was also aware of section 49's failure to require those seeking heirship to provide information concerning adoption when it enacted the other three provisions.

to Bupp gave her an interest.[5]  Even if Hooks had an interest in the estate, his interest, according to section 38 of the Probate Code, is inferior to that held by James Jr., precluding an ability to take by intestacy.

## CONCLUSION

Based on the foregoing, we hold James Jr. is the sole heir of Forister's estate, negating any interest Hooks might have in the estate.  In the absence of any interest by Hooks, he had nothing to assign to Bupp so as to confer standing upon her.  Accordingly, we affirm the trial court's judgment granting James Jr.'s motion to dismiss for lack of standing.

Marialyn Barnard, Justice

---

[5] The parties disputed Hooks's claim as a descendant of the Puckett line.  Specifically, Bupp claimed Hooks descended from John Henry Puckett and his first wife; James Jr. is descended from a John Henry Puckett and his second wife. James Jr. asserted the "John Henry Puckett" from which Hooks claimed, was not the same "John Henry Puckett" from which he claimed by way of Forister.