

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00051-CV

IN RE ESTATE OF TIMOTHY GLEN CHAPMAN, DECEASED

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. P-17573

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After the Independent Administrator[1] of the Estate of Timothy Glen Chapman (the Administrator) failed to make payments on a lien note secured by a first lien deed of trust on certain real estate located in Lamar County, Peoples Bank (the Bank) conducted a non-judicial foreclosure sale of the secured real estate. Thereafter, the Bank sued the Administrator in the 62nd Judicial District Court of Lamar County (the District Court) claiming a deficiency remaining on the note after the foreclosure sale. The Bank obtained a default judgment against Chapman's estate on the deficiency (the Deficiency Judgment), and filed this action in the County Court at Law of Lamar County, in its role as a probate court[2] (the Probate Court), seeking to remove the Administrator and to enforce its claim against certain funds that might be payable to Chapman's estate by virtue of a mediated settlement agreement (MSA) in a separate lawsuit pending in the District Court. After a hearing, the Probate Court entered a final judgment finding that any funds payable to Chapman's estate or his heirs in the separate lawsuit were property of Chapman's estate, ordering that any such funds be paid first to the Bank to satisfy the Deficiency Judgment, and awarding the Bank its attorney fees.

In this appeal, the Administrator asserts that the judgment should be overturned because (1) the Bank lacked standing to assert its claim in the Probate Court against the Chapman estate,

---

[1]After Timothy Glen Chapman died intestate, Erica Chapman was appointed Independent Administrator of his estate by the Probate Court on April 11, 2014. Because the Texas Estates Code uses the terms executor and administrator, even for female personal representatives, we follow that convention. *See, e.g.*, TEX. EST. CODE ANN. § 22.031 (West 2014), § 301.051 (West Supp. 2016).

[2]The County Court at Law of Lamar County exercises original probate jurisdiction. *See* TEX. GOV'T CODE ANN. §§ 25.0003(d), 25.1412(a) (West Supp. 2016).

(2) the District Court's Deficiency Judgment that is the basis of the Bank's claim is void for lack of subject-matter jurisdiction, (3) the Probate Court lacked jurisdiction over the MSA, and (4) the Probate Court erred in modifying and frustrating the purpose of the MSA. We sustain the first two issues urged on appeal by the Administrator and therefore vacate the Probate Court's judgment because we conclude that the Bank lacked standing, thereby depriving the Probate Court and the District Court of subject-matter jurisdiction over the Bank's deficiency claims.

*The Foreclosure and Deficiency Claim.* Before his death, Chapman had entered into a lien note with the Bank secured by a first lien deed of trust on certain real estate located in Lamar County. On February 3, 2015, the Bank purchased the secured real estate at a non-judicial foreclosure sale for $250,000.00. On June 3, 2016, the Bank filed suit against the Administrator in cause number 85528 in the District Court claiming a deficiency balance remaining after its foreclosure. On September 14, 2016, a Deficiency Judgment was entered by the District Court in cause number 85528 granting the Bank a money judgment against the Administrator for the claimed deficiency remaining after the foreclosure.

*The Election.* The Bank never notified the Administrator that it elected to have its claim approved as a matured secured claim. *See* TEX. EST. CODE ANN. § 403.052 (West 2014).

*The Separate Lawsuit.* On or about January 15, 2015, the Administrator and Chapman's daughters intervened in cause number 83813 in the District Court, seeking to recover monies they claimed had been owed to Chapman from the sale of stock of Glen Chapman, Inc., a corporation owned by Chapman's family. In her suit, the Administrator sought recovery of the monies on behalf of the Chapman estate, or in the alternative, on behalf of the Timothy Glen Chapman

3

Irrevocable Trust (the Trust).[3] On June 9, 2016, the parties in cause number 83813 entered into the MSA, which provided that a total of $400,000.00 would be paid by those defendants to the Trust.

*The Subsequent Probate Proceedings*. On September 6, 2016, the Bank filed an unsecured claim in the Probate Court for its "legal deficiency claim after a foreclosure sale" of the secured real estate. Two days later, the Bank filed an Emergency Motion to Remove Independent Administrator, alleging that the Administrator had diverted monies belonging to the Chapman estate into the Trust, whose beneficiaries were the children of Chapman, in an attempt to defraud the creditors[4] of the Chapman estate. After initially granting the motion to remove the Administrator, the Probate Court, in accordance with an agreement of the parties, reinstated the Administrator, and set the Bank's contested claim and motion for final hearing to determine whether the proceeds due under the MSA belonged to the Chapman estate, and, if so, the proper disposition of those proceeds.

Although the Bank never filed an amended notice of claim after it obtained the Deficiency Judgment, at the final hearing, it asserted, without objection, that its claim was based on the Deficiency Judgment. After the final hearing, the Probate Court entered its order determining that the proceeds due under the MSA were property of the Chapman estate and ordering that all payments made under the MSA be paid to the Bank until the Deficiency Judgment, together with prejudgment interest and attorney fees of $4,500.00 in favor of the Bank, is satisfied.

---

[3]The Trust was apparently created by Chapman's parents and initially funded by the transfer of shares of common stock of Glen Chapman, which transfer was subsequently cancelled.

[4]There apparently were no other creditors of the Chapman estate.

*(1)    The Bank Lacked Standing to Assert its Claim in Probate Court*

Before a court may exercise subject-matter jurisdiction, a plaintiff must have standing. *See Abbott v. G.G.E.*, 463 S.W.3d 633, 646 (Tex. App.—Austin 2015, pet. denied) (citing *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 739 (Tex. App.—Austin 2014, pet. dism'd)). If a plaintiff lacks standing to assert a claim, then a court has no jurisdiction to hear it. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). To have standing, the plaintiff "must have suffered a 'concrete injury' and a 'real controversy' must exist between the parties such that it can be resolved by the court." *In re Estate of Forister*, 421 S.W.3d 175, 177 (Tex. App.—San Antonio 2013, pet. denied) (quoting *Heckman*, 369 S.W.3d 154). A court must dismiss a claim if the plaintiff lacks standing to assert it, and it must dismiss the entire action for want of jurisdiction if the plaintiff lacks standing to assert any of its claims. *Heckman*, 369 S.W.3d at 150–51. Whether a plaintiff has standing is a question of law that we review de novo. *Id.* at 149–50; *Matter of Estate of Holley*, No. 11-15-00173-CV, 2017 WL 549009, at *3 (Tex. App.—Eastland Feb. 10, 2017, pet. denied) (mem. op.). Standing may not be waived, and it can be challenged for the first time on appeal, either by a party or by the appellate court.[5] *Tex. Ass'n of Bus.*, 852 S.W.2d at 445.

The burden of establishing standing is on "the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* at 446 (citing *Richardson v. First Nat'l*

---

[5]In its brief, Peoples asserts that the Administrator waived her complaint that it lacked standing in the Probate Court because she first raised the issue in her motion for new trial, because the parties entered into a Rule 11 Agreement regarding the issues to be decided by the Probate Court, and because she should have raised the issue by way of motion in limine before the other issues were tried. Although standing may be challenged by a plea to the jurisdiction, since it is a component of subject-matter jurisdiction, it cannot be waived and can be challenged for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993); *In re Estate of Valsco*, 214 S.W.3d 213,

5

*Life Ins. Co.,* 419 S.W.2d 836, 839 (Tex. 1967)). When standing is challenged for the first time on appeal, we construe the pleadings in the favor of the party asserting standing "and[,] if necessary, review the entire record to determine if any evidence supports standing." *Id.* The "suit is subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction." *Terrell ex rel. Estate of Terrell v. Sisk*, 111 S.W.3d 274, 277 (Tex. App.—Texarkana 2003, no pet.) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446).

To have standing in probate cases, the Texas Estates Code "requires the person to qualify as an 'interested person.'" *See Wright v. Marsh*, Nos. 12-10-00367-CV, 12-10-00414-CV, 2012 WL 1623430, at *9 (Tex. App.—Tyler May 9, 2012, pets. denied) (mem. op.) (citing *A & W Indus., Inc. v. Day*, 977 S.W.2d 738, 741 (Tex. App.—Fort Worth 1998, no pet.)); *see Seyffert v. Briggs*, 727 S.W.2d 624, 626 (Tex. App.—Texarkana 1987, writ ref'd n.r.e.).[6] The Texas Estates Code defines an interested person as "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." Tex. Est. Code Ann. § 22.018(1) (West 2014).

The Bank asserts that it is an interested person because it is a creditor and it has a claim against the Chapman estate. We must determine, then, whether the pleadings and evidence before the Probate Court support the Bank's assertion.

---

216 (Tex. App.—El Paso 2007, no pet.). Further, as a component of subject-matter jurisdiction, standing may not be conferred by agreement. *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 837 (Tex. App.—Austin 2010, no pet.) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–46).

[6]*See, e.g.*, Tex. Est. Code Ann. § 404.003 (West 2014) (only an interested person may file a motion to remove an independent executor or administrator), § 405.001(a) (West 2014) (only an interested person may petition the probate court for an accounting by the independent executor or administrator).

The only pleadings of the Bank in the Probate Court at the time of the final hearing were the Bank's notice of claim and its emergency motion to remove the Administrator. The Bank's notice of claim and its attachments established that, at the time of Chapman's death, it was a secured creditor by virtue of a lien note secured by real estate. During the course of the administration of the estate, the Bank notified the Administrator of default under the lien note and eventually sold the secured real estate at a non-judicial foreclosure sale. The Bank's notice of claim states its claim represents "the legal deficiency claim after a foreclosure on" the secured real estate. The Bank then filed its emergency motion to remove the Administrator, asserting it was a creditor of the estate by virtue of its notice of claim filed two days earlier. In the emergency motion, the Bank sought the removal of the Administrator and an order providing that any future administrator arrange for the payment of all creditor claims as part of any settlement of any claims of the estate.

Under the Texas Estates Code, if a secured creditor does not elect to have its claim treated as a matured secured claim within a prescribed time period,[7] the creditor has effectively elected that the claim will be a preferred debt and lien against the property securing the indebtedness "and the claim may not be asserted against other assets of the estate." TEX. EST. CODE ANN. § 403.052. Explaining the effect of the predecessor Probate Code provisions, the Texas Supreme Court has explained that, when a secured creditor elects for its claim to be approved as a matured secured claim, upon any sale of the collateral, the creditor's claim has priority over any other claim, except

---

[7]The Bank does not contest that it never notified the Administrator at any time that it was electing to have its claim approved as a matured secured claim.

7

for claims for funeral and last illness expenses and for the expenses of administering the estate. *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 617 (Tex. 1992) (under predecessor Probate Code provision). Further, if the proceeds from the sale of the collateral did not pay off its note, the matured secured claimant can "collect[] the deficiency as an unsecured seventh-class creditor." *Id.* (citations omitted). However, when the secured creditor elects to have its claim approved as a preferred debt and lien, the creditor has priority over all other claims on sale of the collateral, but the preferred debt and lien claimant "forfeit[s] any possibility of collecting a deficiency from the estate." *Id.*; *see also Wyatt v. Morse*, 102 S.W.2d 396, 399 (Tex. 1937) (predecessor statute evidenced legislative declaration that in return for preferred lien on secured property, creditor must "forgo making further claim against the assets of the estate"); *Estate of Parks*, No. 05-15-00346-CV, 2016 WL 1085258, at *2 (Tex. App.—Dallas Mar. 21, 2016, pet. denied) (mem. op.) ("If a claim is a preferred debt and lien, . . . [n]o further claim may be made against other estate assets."); *Gross Nat'l Bank of San Antonio v. Merchant*, 459 S.W.2d 483, 486–87 (Tex. Civ. App.—San Antonio 1970, no pet.) (after creditor accepted all funds from sale of secured property it elected to have its claim approved as preferred debt and lien and therefore had no further claim).

In other words, the Texas Estates Code provides that, when a secured creditor elects to have its claim approved as a preferred debt and lien claim, if the independent executor[8] defaults in the payment of the debt,[9] the secured creditor may look only to its collateral for the satisfaction of

---

[8]As used in the Texas Estates Code, "independent executor" includes independent administrator. TEX. EST. CODE ANN. § 22.017.

[9]The independent executor may elect to pay the debt according to its terms. TEX. EST. CODE ANN. § 403.052.

8

any claim it may have against the estate. By foreclosing on the secured real estate, the Bank satisfied any debt or claim against the Chapman estate and did not have a deficiency claim as asserted in its notice of claim and motion to remove the Administrator. *Bandy*, 835 S.W.2d at 617; *Merchant*, 459 S.W.2d at 486–87. Therefore, the Bank's pleadings do not support its contention that it had a claim against the Chapman estate.

Neither do its pleadings support the Bank's contention that it was a creditor of the Chapman estate. The Texas Estates Code does not define the term "creditor." When a term is not defined in a statute, we look to its plain and common meaning and how it is commonly used. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). "Creditor" is commonly defined as "one to whom a debt is owed." *Creditor*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006); *see also Creditor*, BLACK'S LAW DICTIONARY (10th ed. 2014). Since the Bank extinquished any debt owed by the Chapman estate when it foreclosed on its secured real estate, no debt was owed it by the estate.[10] Therefore, the Bank's pleadings do not support its contention that it was a creditor of the Chapman estate.

---

[10]The Bank also relies on *In re Estate of York*, 951 S.W.2d 122, 126 (Tex. App.—Corpus Christi 1997, no writ), which recognized an interested person as "one who 'has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefitted, or in some manner materially affected, by the probate [proceeding].'" *Id.* (quoting *Logan v. Thomason*, 202 S.W.2d 212, 215 (Tex. 1947)). First, we note that *Logan*, on which *York* relied, was decided before the Legislature defined "interested person" by statute. *In re Davidson*, 485 S.W.3d 927, 931 (Tex. App.—Tyler 2016, orig. proceeding). Even assuming the continued viability of the *Logan* definition of an interested person, the Bank would not be an interested person. Since the Chapman estate's debt to the Bank was fully satisfied by the Bank's foreclosure on the secured real estate, the Bank did not have a pecuniary interest in the estate.

9

*(2)     The District Court's Deficiency Judgment Is Void*

In spite of its pleadings, the Bank argues that its claim against the Chapman estate was not based on its deficiency claim, but rather on the Deficiency Judgment.  This argument is based on the evidence of the Deficiency Judgment introduced at the final hearing.  Although the Deficiency Judgment does not reflect its underlying basis, other evidence before the Probate Court does.  In its motion to remove the Administrator, the Bank admitted that it had sued the Chapman estate in cause number 85528 in the District Court for a money judgment on its claim for "the legal deficiency amount after a foreclosure on the" secured real estate.  Further, in the final hearing, counsel for the Bank informed the Probate Court that its claim was based on the deficiency amount remaining after its foreclosure on the secured real estate, for which it sued the Chapman estate and obtained the Deficiency Judgment.

To determine whether the Deficiency Judgment supports the Bank's standing in the Probate Court, we must address the Administrator's second issue, which asserts that the Deficiency Judgment is void because the Bank lacked standing to bring that suit in District Court.[11]  The Bank responds that the Administrator has waived this issue because she did not timely assert a direct attack on the Deficiency Judgment[12] and because she raised the issue in the Probate Court only in her motion for new trial.  However, a void judgment may be attacked both directly and collaterally.

---

[11]The Administrator also asserted this argument in her motion for new trial.

[12]The Bank also asserts in its brief that the Administrator made an untimely, direct attack on the Deficiency Judgment in the District Court and attaches documents in its appendix that allegedly support its assertion.  However, attachments in a party's appendix, but not appearing in the appellate record, are not part of the record of the case and cannot be considered on appeal.  *See* TEX. R. APP. P. 34.1 (describing contents of appellate record); *Banks v. Bank of Am., N.A.*, No. 03-16-00046-CV, 2017 WL 1832489, at *3 n.5 (Tex. App.—Austin May 4, 2017, no pet.) (mem. op.).

*PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). Further, a void judgment may be collaterally attacked at any time. *Id.* at 272. Also, a void judgment may be collaterally attacked in a new suit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). "A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *PNS Stores, Inc.*, 379 S.W.3d at 272 (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)); *see, e.g.*, *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878 (Tex. 1973).

A judgment is void when the record shows that "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Since the Administrator challenges the Bank's standing to bring the action in District Court, she is asserting that the Deficiency Judgment is void because the District Court lacked subject-matter jurisdiction.

Just as the Texas Estates Code limits who may bring an action in a probate proceeding to interested persons, it also limits who may bring an action against an independent executor for payment of a claim. "Any person having a debt or claim against the estate may enforce the payment of the same by suit against the independent executor . . . ." TEX. EST. CODE ANN. § 403.059 (West 2014). Thus, only a person who has a debt or claim against the estate may bring suit against the independent executor. The record in this case shows that the Bank filed suit in the District Court asserting its right to recover the amounts remaining after it foreclosed on its collateral, and obtained the Deficiency Judgment on that basis. However, as we have previously

11

discussed, by electing to have its claim allowed as a preferred debt and lien claim, the Bank had no other claim against the Chapman estate, and any debt owed the Bank by the Chapman estate was extinquished when the Bank foreclosed on its collateral. Therefore, since the Bank did not have a debt or claim against the estate, it did not have standing to bring the District Court action, and the District Court lacked subject-matter jurisdiction to enter the Deficiency Judgment. Consequently, the Deficiency Judgment is void and provides no basis to support the Bank's standing to bring the Probate Court action. *See Merchant*, 459 S.W.2d at 486–87.

In *Merchant*, Gross National Bank owned a note executed by the decedent secured by a lien on an automobile. During the course of the estate administration, the automobile was sold and the proceeds were paid in full to the creditor. Thereafter, the creditor obtained an agreed judgment against the decedent's estate for the deficiency remaining after the sale of its collateral, and filed an abstract of judgment. The estate then sold certain real property it owned to Merchant. *Id.* at 484. The creditor sued Merchant, seeking to foreclose its judgment lien against the property. *Id.* at 485. After a non-jury trial, the trial court entered a take-nothing judgment against the creditor. *Id.* at 484. On appeal, the court of appeals held that one basis for upholding the trial court's judgment was that, after the creditor elected to have its claim treated as a preferred debt and lien claim and received all of the proceeds from the sale of its collateral, it had no further claim under the applicable Probate Code provisions. *Id.* at 487. Since by statute the creditor had no further claim, it was not allowed to do indirectly what it could not by law do directly.

In this case, the Bank elected to have its claim allowed as a preferred debt and lien against its secured real property, thereby electing to look only to its collateral for the satisfaction of its

12

claim. By foreclosing on its collateral, the Bank effectively satisfied its claim against the estate. Under the Texas Estates Code, the Bank was forbidden from asserting the claim against any other asset of the estate. *See* TEX. EST. CODE ANN. § 403.052. By obtaining the Deficiency Judgment in the District Court based on the amount remaining after foreclosure, and seeking to enforce that judgment in the Probate Court, the Bank attempted to do indirectly what the Estates Code forbids it from doing directly. *See Gold Kist, Inc. v. Carr*, 886 S.W.2d 425, 431–32 (Tex. App.—Eastland 1994, writ denied) (party may not do indirectly what law does not allow directly). Under these circumstances, the Deficiency Judgment is void and does not constitute a claim against the estate.[13] *See Merchant*, 459 S.W.2d at 486–87. Therefore, the record does not show that the Bank either is a creditor of or has a claim against the Chapman estate.

Since neither the Bank's pleadings nor the record show that the Bank is an interested person, it lacked standing to sue on a deficiency. Therefore, we sustain the Administrator's first and second issues.[14] Further, since the Bank's claimed standing to assert its claims is founded on the deficiency remaining after its foreclosure, it is impossible for it to amend its pleadings to confer jurisdiction on the Probate Court. Therefore, the proper disposition of this appeal is dismissal of the Bank's lawsuit.

---

[13]In its brief, the Bank argues that the Probate Court could not look behind the Deficiency Judgment because it became a new debt that superseded the original cause of action, citing *Kermacy v. First Unitarian Church of Austin*, 361 S.W.2d 734, 736 (Tex. Civ. App.—Austin 1962, writ ref'd. n.r.e.), and *Martin v. Phillips Petroleum Co.*, 455 S.W.2d 429, 437 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ). Neither of these cases supports the Bank's argument.

[14]Since these issues are dispositive of this appeal, we do not address the Administrator's remaining issues.

For the reasons stated, we vacate the judgment of the county court at law, and we dismiss this case for want of jurisdiction.  *See* TEX. R. APP. P. 43.2(e).


                                        Josh R. Morriss III
                                        Chief Justice

Date Submitted:      October 23, 2017
Date Decided:        November 9, 2017

14