# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-15-00262-CV

**Texas Association of Acupuncture and Oriental Medicine, Appellant**

**v.**

**Texas Board of Chiropractic Examiners; and
Patricia Gilbert, Executive Director, in her Official Capacity, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. D-1-GN-14-000355, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## O P I N I O N

We grant, in part, appellant Texas Association of Acupuncture and Oriental Medicine's motion for rehearing, withdraw our previous opinion and judgment dated August 18, 2016, and substitute the following opinion and judgment in their place.

The Texas Association of Acupuncture and Oriental Medicine (the Acupuncture Association) sued the Texas Board of Chiropractic Examiners (the Chiropractic Board) and Patricia Gilbert, in her official capacity as the Executive Director of the Chiropractic Board, seeking declarations that certain provisions in two of the Chiropractic Board's administrative rules are

invalid.[1]  *See* Tex. Gov't Code § 2001.038 (permitting challenge to validity or applicability of agency rules); *see also* 22 Tex. Admin. Code §§ 78.13(a)(4), (b)(2), (e)(2)(C) (2016) (Texas Bd. of Chiropractic Exam'rs, Scope of Practice), 78.14 (Texas Bd. of Chiropractic Exam'rs, Acupuncture). Specifically, the Acupuncture Association asserted that the rule provisions are void because they authorize chiropractors to perform acupuncture and, as a result, impermissibly expand the scope of practice for chiropractors beyond that permitted by statute.  *See* Tex. Occ. Code §§ 201.001-.606. Alternatively, the Acupuncture Association sought a declaration that the statutory scheme violates the Texas Constitution to the extent it authorizes chiropractors to practice acupuncture.  *See* Tex. Const., art. III, § 35, art. XVI, § 31.

On cross-motions for summary judgment, the trial court granted the Chiropractic Board's motion for summary judgment, denied the Acupuncture Association's motion for summary judgment, and dismissed the Acupuncture Association's claims.  The Acupuncture Association filed this appeal.  We will reverse that portion of the trial court's judgment dismissing the Acupuncture Association's challenge to the Chiropractic Board's rule expressly authorizing acupuncture and remand for further proceedings.  In all other respects, we will affirm the judgment of the trial court.

**BACKGROUND**

The practice of medicine in Texas is governed by the Texas Medical Practice Act and regulated by the Texas Medical Board.  *See* Tex. Occ. Code §§ 151.001-168.202.  Among other

---

[1]  This suit was originally brought against Yvette Yarbrough, the former Executive Director of the Texas Board of Chiropractic Examiners.  We automatically substitute the name of the successor to this office, Patricia Gilbert.  *See* Tex. R. App. P. 7.2.

things, the Medical Practice Act requires that a person have a Medical Board-issued license to lawfully "practice medicine" in the state. *Id*. § 155.001. The Medical Practice Act, however, exempts a variety of other heath-related fields—the practitioners of which are subject to separate legal requirements and regulations—from compliance with the Act and from the Texas Medical Board's regulatory authority. *See id*. § 151.052. One of these exempted fields is the practice of chiropractic, which is regulated by Chapter 201 of the Occupations Code (or "the Chiropractic Act"). *See id.* §§ 151.052(a)(3), 201.001-.606. The Chiropractic Act defines the permissible scope of chiropractic practice, imposes education and licensing requirements, and delegates regulatory authority to the Chiropractic Board. The net effect of these statutes is that a person licensed as a chiropractor can lawfully do things that would otherwise constitute "practicing medicine" without obtaining a license from the Texas Medical Board as long as he remains within the statutory scope of practice for chiropractors. *See Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 467 (Tex. App.—Austin 2012, pet. denied) ("*TMA I*").

In relevant part, section 201.002 of the Chiropractic Act defines the scope of chiropractic practice as follows:

> (b) A person practices chiropractic under this chapter if the person:
>
> (1) uses objective or subjective means to analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body; [or]
>
> (2) performs nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system[.]
>
> . . .

3

(c)     The practice of chiropractic does not include:

(1)     incisive or surgical procedures[.]

Tex. Occ. Code § 201.002(b), (c).  Section 201.002 defines the term "incisive or surgical procedures" as follows:

"Incisive or surgical procedure" includes making an incision into any tissue, cavity, or organ by any person or implement.  The term does not include the use of a needle for the purpose of drawing blood for diagnostic testing.

*Id*. § 201.002(a)(3).

In the years that followed the Legislature's promulgation of the current scope of practice for chiropractors, the Chiropractic Board "informally advised" its chiropractic licensees that the Chiropractic Act permitted chiropractors in Texas to perform a variety of procedures, including acupuncture.[2]  *See TMA I*, 375 S.W.3d at 470 & n.8.  In 2005, the Texas Legislature mandated that the Chiropractic Board "adopt [formal] rules clarifying what activities are included within the scope of the practice of chiropractic and what activities are outside that scope," including "clearly specify[ing] the procedures that chiropractors may perform" and "any equipment and the use of that equipment that is prohibited."  *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 8, 2005 Tex. Gen. Laws 3464, 3466 (codified at Tex. Occ. Code §§ 201.1525-.1526).  In response, the Chiropractic Board promulgated scope-of-practice rules that, among other things, authorized

---

[2]  For a detailed account of the history of the legislation and regulation of the practice of chiropractic in Texas, see this Court's opinion in *Texas Board of Chiropractic Examiners v. Texas Medical Association*, 375 S.W.3d 464 (Tex. App.—Austin 2012, pet. denied).

chiropractors to perform a procedure called needle EMG, a procedure called manipulation-under-anesthesia (MUA), and acupuncture. *See* 31 Tex. Reg. 4613 (2006) (Texas Bd. of Chiropractic Exam'rs, Scope of Practice) *amended in part by* 34 Tex. Reg. 4332 (2009) (proposed Jan. 2, 2009) (codified at former 22 Tex. Admin. Code § 75.17 *repealed* 40 Tex. Reg. 376 (2015) (proposed Sept. 26, 2014)).

The Texas Medical Association subsequently sued the Chiropractic Board seeking, in part, declarations that those provisions in the scope-of-practice rules that permitted chiropractors to perform needle EMG and MUA were invalid because they exceeded the statutory scope of chiropractic practice and, therefore, constituted the unlawful practice of medicine. *See TMA I*, 375 S.W.3d at 472-73. The district court agreed, granted summary judgment in favor of the TMA on these claims, and declared that the rule provisions authorizing needle EMG and MUA were invalid. *Id.* at 473. In *TMA I*, this Court affirmed that portion of the trial court's judgment. *Id.* at 482, 488. Although the Chiropractic Board's scope-of-practice rules also authorized acupuncture at the time that the TMA filed their suit against the Board, the TMA did not challenge those portions of the rules.

The Acupuncture Association subsequently filed this suit, challenging those portions of the Board's rules that authorize acupuncture. *See* Tex. Gov't Code § 2001.038. In its petition, the Acupuncture Association asserted that the Chiropractic Act "expressly limits chiropractic to matters affecting the spine and musculoskeletal system and specifically prohibits the use of needles, with a narrow exception for diagnostic blood draws." The Association sought declarations that various provisions in the Chiropractic Board's scope-of-practice rules authorizing chiropractors to

5

practice acupuncture without a license from, or oversight of, the Texas State Board of Acupuncture Examiners exceed the statutory scope of practice for chiropractors and, as a result, are invalid. Alternatively, the Acupuncture Association sought a declaration that the statutory scheme in the Chiropractic Act, to the extent it authorizes chiropractors to practice acupuncture, violates the Texas Constitution. *See* Tex. Const. art. XVI, § 31 (prohibiting legislature from giving preference by law to "any schools of medicine"); Tex. Const. art. III, § 35 (prohibiting legislature from enacting bill that contains more than one subject).

The Acupuncture Association moved for traditional summary judgment on its claims that the Chiropractic Board's rules and, alternatively, the Chiropractic Act are invalid; conversely, the Chiropractic Board moved for summary judgment seeking a take-nothing judgment on the Acupuncture Association's claims.[3] The trial court granted the Chiropractic Board's motion and denied the Acupuncture Association's motion. The Acupuncture Association filed a notice of appeal and, in three issues, challenges the trial court's summary-judgment rulings.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when the summary-judgment evidence shows that there are no disputed issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant seeking traditional summary

---

[3] The Chiropractic Board also moved for summary judgment on its affirmative defense of limitations. Although the Acupuncture Association has challenged this ground on appeal, the Chiropractic Board has withdrawn its limitations defense as a basis for affirming the summary judgment.

6

judgment on its own cause of action has the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of its cause of action. *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 905 (Tex. App.—Austin 2010, no pet.). To obtain traditional summary judgment on an opposing party's claims, the movant must conclusively negate at least one element of each of the claims or conclusively establish each element of an affirmative defense. *See Lakey v. Taylor*, 435 S.W.3d 309, 316 (Tex. App.—Austin 2014, no pet.) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). When, as here, both parties move for summary judgment on overlapping issues and the trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides and determine all questions presented. *Valence Operating Co.*, 164 S.W.3d at 661. If we determine that the trial court erred, we render the judgment the trial court should have rendered. *Id*.

The Chiropractic Board, as a state administrative agency, has only those powers that the Legislature expressly confers upon it and those implied powers that are reasonably necessary to carry out its express functions or duties. *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001). Absent specific or implied statutory authority, an agency rule is invalid. *Id*. An agency may not exercise what is effectively a new power based on a claim that the exercise is expedient for administrative purposes. *Id*.

To establish a rule's facial invalidity, a challenger must show that the rule (1) contravenes specific statutory language, (2) is counter to the statute's general objectives, or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Harlingen Family Dentistry, P.C. v. Texas Health & Human Servs.*

7

*Comm'n*, 452 S.W.3d 479, 482 (Tex. App.—Austin 2014, pet. dism'd). An agency rule is presumed valid, and the challenging party bears the burden to demonstrate its invalidity. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied).

The parties' arguments on appeal primarily concern the proper construction of the Occupations Code. We review questions of statutory construction de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *Id*. at 631-32. In determining legislative intent, we begin with the statute's words. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We use any definitions provided by the statute and assign undefined terms their ordinary meaning, unless a different, more precise definition is apparent from the term's use in the context of the statute. *Id*.

Where the statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would lead to absurd results. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2014). If a statute is ambiguous—i.e., there is more than one reasonable interpretation—we give "serious consideration" to the construction of the statute by the administrative agency charged with its enforcement, "so long as the construction is reasonable and does not conflict with the statute's language." *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628-30 (Tex. 2011).

**ANALYSIS**

In its first issue on appeal, the Acupuncture Association argues that the trial court erred in failing to conclude that the Chiropractic Board exceeded its statutory rulemaking authority in promulgating Rule 78.13(a)(4), (b)(2), (e)(2)(C), and Rule 78.14.

As previously discussed, the Chiropractic Act authorizes chiropractors to "use[] objective or subjective means to analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body" and to "perform[] nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system[.]" Tex. Occ. Code § 201.002(b)(1), (2). Chiropractors are expressly excluded from performing "incisive or surgical procedures." *Id*. § 201.002(c)(1).

In its scope-of-practice rule, Rule 78.13, the Chiropractic Board construed and defined the term "incision" as "[a] cut or a surgical wound; also, a division of the soft parts made with a knife or hot laser." 22 Tex. Admin. Code § 78.13(a)(4). In addition, the Chiropractic Board clarified that "[n]eedles may be used in the practice of chiropractic under standards set forth by the Board but may not be used for procedures that are incisive or surgical." *Id*. § 78.13(b)(2). Similarly, in subsection (e)(2)(C) of Rule 78.13, the Board authorized chiropractors to "provide therapeutic care for [patients]" using "acupuncture and other reflex techniques." *Id*. § 78.13(e)(2)(C). Finally, in Rule 78.14, the Chiropractic Board specifically addressed the practice of acupuncture by chiropractors by (1) setting forth the training and certification requirements that chiropractors must obtain in order to practice acupuncture and (2) specifying that chiropractors "must comply with the chiropractic scope of practice as defined by the Texas Occupations Code [section] 201.002" when performing acupuncture. *See id*. § 78.14.

9

According to the Acupuncture Association, the challenged rule provisions are invalid because they purport to authorize chiropractors to practice procedures that are outside of the statutory scope of chiropractic practice. Specifically, the Acupuncture Association argues that the rule provisions at issue impermissibly attempt to narrowly define "incisive" under section 201.002 of the Chiropractic Act in a manner that generally permits the use of needles, including acupuncture needles. The Acupuncture Association contends that the statutory scope of practice more broadly prohibits the use of any needles in the practice of chiropractic, except for diagnostic blood draws, and that any penetration of the skin by a needle is "incisive." *See* Tex. Occ. Code § 201.002(a)(3). In support of its position, the Association points out that the Chiropractic Act states that "'incisive or surgical procedure' includes making an incision into any tissue, cavity, or organ by any person or implement" and identifies only one exception—"the use of a needle for the purpose of drawing blood for diagnostic testing." *Id*. The Association reasons that the implication of the statute's express exception for blood draws is that all other procedures involving needle use are "incisive" and thus excluded from the scope of chiropractic practice. Such an interpretation, the Association suggests, is consistent with various canons of statutory construction, including the canon known as *expressio unius est exclusio alterius*, under which the express mention or inclusion of one thing presumes the Legislature intentionally excluded the other or alternate thing. *See Harlingen Family Dentistry*, 452 S.W.3d at 482. Under the Acupuncture Association's construction, chiropractors are not strictly engaged in the practice of chiropractic when they practice acupuncture because acupuncture needles are not used "for the purpose of drawing blood for diagnostic testing." Consequently, the Acupuncture Association contends that the trial court erred in upholding the

challenged rules permitting acupuncture by chiropractors and in granting summary judgment in favor of the Chiropractic Board.

In response, the Chiropractic Board argues that the trial court did not err in granting summary judgment in its favor because the unambiguous language of Chapter 205 of the Occupations Code (or "the Acupuncture Act") creates an express exemption for chiropractors that allows them to perform acupuncture, to the extent it is otherwise performed within the scope of chiropractic practice, without being subject to the requirements of the Acupuncture Act. *See* Tex. Occ. Code §§ 205.001-.458. The Acupuncture Act regulates acupuncturists in Texas and defines acupuncture, in relevant part, as:

> the nonsurgical, nonincisive insertion of an acupuncture needle and the application of moxibustion to specific areas of the human body as a primary mode of therapy to treat and mitigate a human condition, including evaluation and assessment of the condition[.]

*Id.* § 205.001(2). The Chiropractic Board contends that the Chiropractic Act and the Acupuncture Act should be construed consistently and in harmony, giving effect to all parts of the statutes. *See La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984) ("Generally, courts are to construe statutes as to harmonize with other relevant laws, if possible."). When this is done, the Board reasons, one can only reasonably conclude that the Legislature, by defining acupuncture as a "nonincisive, nonsurgical" procedure, "brought that procedure into the scope of practice of chiropractic." Alternatively, the Chiropractic Board asserts that the definition of "acupuncture," as used in the Acupuncture Act, is ambiguous and that (1) the legislative history related to the amendment of the Acupuncture Act supports the Chiropractic Board's interpretation; (2) Chapter

11

201 and Chapter 205 are *in pari materia* and can only be reconciled by removing acupuncture from those procedures that are "incisive" under Chapter 201; and (3) the Chiropractic Board's interpretation of "incisive"—that only some needles are incisive and that acupuncture needles are nonincisive—is a reasonable interpretation and is entitled to deference.

Our analysis of the parties' positions must begin against the backdrop of our decision in *TMA I*. This Court's determination in *TMA I* that the Chiropractic Board's rules authorizing needle EMG were invalid turned on whether the needle-EMG procedure was "incisive" under the Chiropractic Act. *See TMA I*, 375 S.W.3d 475-76. Like the Acupuncture Association does in the instant case, the Texas Medical Association in *TMA I* took the position that all needle use is "incisive" when the needle is inserted into "any tissue, cavity, or organ" and that this interpretation was the negative implication of the Legislature's exception for blood draws from "incisive or surgical." *Id*. at 476. When *TMA I* was decided, the Chiropractic Board's rules provided that the use of a needle was incisive "if the procedure result[ed] in the removal of tissue other than for the purpose of drawing blood." *See* former 22 Tex. Admin. Code § 75.17(a)(3) (Texas Bd. of Chiropractic Exam'rs, Scope of Practice) *amended in part by* 38 Tex. Reg. 137 (2013) (proposed Sept. 28, 2012). The Chiropractic Board contended that this interpretation of "incisive"—turning on whether tissue was removed—was consistent with the statutory framework, including the Acupuncture Act's definition of acupuncture as "nonincisive," and authorized the use of the needle EMG procedure in the practice of chiropractic. *TMA I*, 375 S.W.3d at 476-77.

In analyzing the Legislature's intent in its use of the term "incisive" in the Chiropractic Act, we started our analysis in *TMA I* by recognizing that the term holds both an

12

ordinary meaning and a "somewhat narrower technical meaning." *Id.* at 479. "Especially in the context of health care, 'incisive' is used to refer to the act of cutting, usually tissue." *Id.* (citations omitted). "By contrast, the ordinary meaning of 'incisive' embraces not only the concept of cutting, but also 'piercing' and 'penetrating.'" *Id.* (citations omitted). In addition, we explained that the Chiropractic Board's own rule defined the term "incision" to mean, in relevant part, "a cut or surgical wound," *see* 22 Tex. Admin. Code § 78.13(a)(4), and that this definition was consistent with the technical use of the term "incisive." *TMA I*, 375 S.W.3d at 480.

This Court focused its analysis on whether the challenged rules were premised on a construction and application of "cut" that was inconsistent with the rule's text and underlying statutes. *Id.* The summary-judgment evidence established that at least some of the types of needles used in needle EMG had a beveled, blade-like edge designed to "cut" into tissue, under any "conceivable definition of that term." *Id.* Accordingly, we concluded that the rule provisions authorizing chiropractors to perform needle EMG exceeded the statutory limits of chiropractic no matter which definition of "incisive"—the broader ordinary meaning, as urged by the Texas Medical Association, or the more narrow, technical meaning, as reflected in the Chiropractic Board's rule definition—was intended by the Legislature. *Id.* In addition, we rejected the Chiropractic Board's more narrow construction of the term "incisive" as being limited to those procedures which result in the removal of tissue, explaining that the construction was "contrary to the text of its own definition of 'incision' as well as the underlying statutes." *Id.* at 481. As a result, we ultimately concluded that the Chiropractic Board's rules limiting needle use unless "incisive" under this narrow construction and permitting chiropractors to perform needle EMG were invalid, at a minimum, to the extent they authorized chiropractors to perform needle EMG with beveled-edged needles. *Id.*

13

As in *TMA I*, our resolution of whether the Chiropractic Board's rules in this case are valid, to the extent they authorize the practice of acupuncture, turns on the Legislature's intended use of the word "incisive" in the Chiropractic Act. *See* Tex. Occ. Code § 201.002(c)(1). The relevant statutory framework has not changed since *TMA I*. Thus, our analysis of whether the practice of acupuncture is "incisive," and thus excluded from the practice of chiropractic under the Act, depends on whether Chiropractic Board Rule 78.13(a)(4), defining "incision" as a "cut" or "surgical wound," is reasonable and consistent with the statute. *See* 22 Tex. Admin. Code § 78.13(a)(4); Tex. Occ. Code § 201.002(a)(3) (defining "incisive or surgical procedure"). This rule provision was not challenged in *TMA I*, and we did not directly decide this issue. We did, however, explain in our opinion that the Chiropractic Board's definition of "incision,"which recognizes that some needles may be considered "incisive," while other needles may not, is consistent with the technical meaning of the term "incisive" and also with the Legislature's view that acupuncture needles are at least capable of being inserted into the body in a "nonincisive" and "nonsurgical" manner. *See TMA I*, 375 S.W.3d at 481; *see also* Tex. Occ. Code § 205.001(2)(A) (defining acupuncture as "nonincisive"). For these reasons, we cannot conclude that Chiropractic Board's definition of "incision" as a "cut" or "surgical wound" represents a construction of the term "incisive," as used in the Chiropractic Act, that is unreasonable or inconsistent with the statutory text. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438 ("[I]f there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, . . . we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statue, regulation, or rule."); *see also* Tex. Gov't Code § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

14

The Acupuncture Association and the Chiropractic Board each moved for summary judgment on the Association's claims that certain portions of Rule 78.13 are invalid, including subsection (a)(4) defining "incision." Because Rule 78.13(a)(4) is not unreasonable or inconsistent with the Chiropractic Act, the trial court did not err in denying the Acupuncture Association's motion for summary judgment and granting summary judgment in favor of the Chiropractic Board with respect to the Acupuncture Association's challenge to Rule 78.13(a)(4).

In addition, the Acupuncture Association and the Chiropractic Board each moved for summary judgment on the Association's claim that subsection (b)(2) of Rule 78.13 is invalid. Rule 78.13(b)(2) states that "needles may be used in the practice of chiropractic under standards set forth by the Board but may not be used for procedures that are incisive or surgical." *See* 22 Tex. Admin. Code § 78.13(b)(2). Like Rule 78.13(a)(4), this rule provision reflects the Chiropractic Board's view that needles may be either incisive or nonincisive. And as with Rule 78.13(a)(4), that construction is not unreasonable or inconsistent with the Chiropractic Act's use of the term "incisive." Consequently, the trial court did not err in denying the Acupuncture Association's motion for summary judgment and granting summary judgment in favor of the Chiropractic Board with respect to the Acupuncture Association's challenge to Rule 78.13, subsection (b)(2).

Finally, the Acupuncture Association moved for summary judgment on its claims that Rule 78.14 and subsection (e)(2)(C) of Rule 78.13 exceed the Chiropractic Board's rulemaking authority. Rule 78.14 and Rule 78.13(e)(2)(C) expressly purport to allow chiropractors to practice acupuncture, subject to certain conditions. *See* 22 Tex. Admin. Code §§ 78.13(e)(2)(C), 78.14. To be entitled to summary judgment on its challenges to Rule 78.14 and Rule 78.13(e)(2)(C), the

15

Acupuncture Association was required to conclusively establish that acupuncture is "incisive," which, as we have explained has been reasonably interpreted to mean "cut." The Acupuncture Association does not contend, nor is there is any evidence in the summary-judgment record suggesting, that acupuncture needles always have a beveled edge or that the needles are otherwise capable of "cutting." As a result, the Acupuncture Association failed to establish, as a matter of law, that the practice of acupuncture is "incisive" and therefore outside the statutory scope of chiropractic practice. Consequently, the trial court did not err in denying the Acupuncture Association's motion for summary judgment on these claims.

The Chiropractic Board also moved for traditional summary judgment on the Association's challenges to Rule 78.14 and Rule 78.13(e)(2)(C). To prevail on its motion with respect to these claims, the Chiropractic Board was required to establish that acupuncture needles are "nonincisive" as a matter of law. The Chiropractic Board, however, does not contend that it presented summary-judgment evidence conclusively establishing that acupuncture needles are not capable of "cutting" and thus are "nonincisive." Instead, the Chiropractic Board asserted in its motion for summary judgment, and now on appeal, that the practice of acupuncture is "nonincisive," as a matter of law, because the Acupuncture Act, in its view, defines acupuncture as "nonincisive." The Chiropractic Board claims that regardless of what properties acupuncture needles possess or what the practice of acupuncture entails, the Acupuncture Act has effectively exempted chiropractors from the Acupuncture Act as a matter of statutory construction.

The crux of the Chiropractic Board's argument is that the Legislature intended for the definition of acupuncture in the Acupuncture Act to specifically address whether acupuncture is

16

"nonincisive" for purposes of the Chiropractic Act. In essence, the Chiropractic Board would have us construe the Chiropractic Act as if it includes the definition of "acupuncture" found in the Acupuncture Act and, consequently, excepts acupuncture from the Chiropractic Act's general prohibition on "incisive" procedures.[4] The Chiropractic Board's argument depends on the application of the doctrine of *in pari materia*.[5]

The doctrine of *in pari materia* is a principle of statutory interpretation, a means of giving full effect to legislative intent. *State v. Wiseman*, 269 S.W.3d 769, 774 (Tex. App.—Austin 2008, no pet.) (citing *Mills v. State*, 722 S.W.2d 411, 413 (Tex. Crim. App. 1986)); *see* Tex. Gov't Code § 311.026(b) (codification of *in pari materia* doctrine in code construction act). Statutes that are found to be *in pari materia* are construed together, as though they were parts of the same law, and if possible, conflicts between the statutes are harmonized. *In the Estate of Forister*, 421 S.W.3d 175, 180 (Tex. App.—San Antonio 2013, pet. denied) (citing *In re J.M.R.*, 149 S.W.3d 289, 292 (Tex. App.—Austin 2004, no pet.)); *Texas State Bd. of Chiropractic Examr's v. Abbott*, 391 S.W.3d 343, 348 (Tex. App.—Austin 2013, no pet.); *see Azeez v. State*, 248 S.W.3d 182, 192 (Tex. Crim. App. 2008). Similarity of purpose or object is the most important factor in determining whether two statutes are *in pari materia*, i.e., whether they are closely enough related to justify interpreting them

---

[4] We note that the Acupuncture Act does not, contrary to the Chiropractic Board's suggestion, declare broadly that any use of an acupuncture needle is categorically "nonincisive." Instead, the Act states that the statutory scope of the practice of acupuncture includes the insertion of a needle into the body if it is done nonsurgically and nonincisively. Tex. Occ. Code § 205.001(2).

[5] The parties appear to contemplate that an ambiguity must exist before this doctrine can be applied to statutory construction. We have decided, however, as outlined below, that the doctrine of *in pari materia* does not apply in this case. As a result, we need not decide whether the statutes at issue have created an ambiguity.

17

as if they were parts of the same law. *See Abbott*, 391 S.W.3d 348. To determine whether two statutes share a common purpose, courts consider whether the two statutes were clearly written to achieve the same objective. *Id.* at 348-49. "The adventitious occurrence of like or similar phrases, or even similar subject matter, in laws enacted for wholly different ends will not justify applying the doctrine." *In re J.M.R.*, 149 S.W.3d at 292.

Here, the Chiropractic Act regulates the practice of chiropractic, defines the scope of chiropractic practice, and prohibits chiropractors from performing "incisive" procedures. *See* Tex. Occ. Code § 201.002. And although we have determined that the Chiropractic Act does not necessarily preclude the use of all needles in the practice of chiropractic, the Chiropractic Act does not refer to the practice of acupuncture, acupuncture needles, or to the Acupuncture Act. Separately, the Legislature enacted the Acupuncture Act, regulating the practice of acupuncture and defining the scope of that practice. *See id.* § 205.001(2)(A). Like the Chiropractic Act, the Acupuncture Act has limited the use of acupuncture needles by acupuncturists "to the nonincisive insertion of acupuncture needles" by defining the term "acupuncture." *See id.* The Acupuncture Act expressly provides that the definitions provided in section 205.001, including the definition of acupuncture, apply to "this chapter," i.e., the Acupuncture Act. *Id.* The Acupuncture Act does not refer to the practice of chiropractic or to the Chiropractic Act, except to provide that a licensed acupuncturist may perform acupuncture on a person if that person has been referred by a licensed chiropractor. *See id.* § 205.301.

There is no textual indication that the Legislature intended to incorporate the Acupuncture Act's definition of "acupuncture" into the Chiropractic Act. *See DLB Architects, P.C.*

*v. Weaver*, 305 S.W.3d 407, 410 (Tex. App.—Dallas 2010, pet. denied) (noting that there was "no indication that the legislature intended to incorporate the occupations code's definition of 'architect' into chapter 150 of the civil practice and remedies code" and rejecting *in pari materia* argument)*; see also Wiseman*, 269 S.W.3d 769 ("Although two statutes need not have been adopted as part of a single legislative act to be considered *in pari materia*, the fact that they were may serve as some indication that the statutes were intended to have a common object or purpose."). And because each statute serves the purpose of defining and regulating a separate health-care field, we cannot conclude that the acts were clearly written to achieve the same objective, despite the fact that they utilize similar terminology.[6] *See DLB Architects*, 305 S.W.3d at 410. Consequently, we cannot conclude that the Legislature necessarily intended for the respective regulatory authorities over these two, separate health-care fields to apply the same meaning to the term "incisive," and accordingly, we will not construe the Chiropractic Act as if it includes the Acupuncture Act's definition of "acupuncture."

To prevail on their motion for summary judgment on the Acupuncture Association's claims that Rule 78.14 and Rule 78.13(e)(2)(C) are invalid, the Chiropractic Board was required to present summary-judgment evidence supporting its contention that acupuncture needles are nonincisive as a matter of law. Because they failed to meet their burden, the trial court erred to the extent it granted summary judgment in favor of the Chiropractic Board on these claims.

---

[6] We recognize, as the Chiropractic Board has pointed out, that the Attorney General previously issued an opinion concluding that the Chiropractic Act and Acupuncture Act could be read *in pari materia* and that the definition in the Acupuncture Act effectively applies to the Chiropractic Act. *See* Tex. Att'y Gen. Op. No. DM-471 (1998). Attorney General opinions, although persuasive, are not binding authority. *See Goodson v. Castellanos*, 214 S.W.3d 741, 747 n.3 (Tex. App.—Austin 2007, pet. denied) (citing *Commissioners Court v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997)). In this case, we disagree with the Attorney General's assertion that the Acupuncture Act and Chiropractic Act may be read *in pari materia* because they "both regulate health care professions."

19

**Constitutional Claims**

In its second and third issues on appeal, the Acupuncture Association asserts, in the alternative, that the trial court erred in granting summary judgment in favor of the Chiropractic Board on its claim that the statutory scheme violates the Texas Constitution to the extent it permits chiropractors to practice acupuncture. Specifically, the Acupuncture Association argues that the statutory scheme (1) impermissibly grants a "preference" to chiropractors over acupuncturists, *see* Tex. Const. art. XVI, § 31, and (2) was the result of legislation aimed at amending the Acupuncture Act, not the Chiropractic Act, *see* Tex. Const. art. III, § 35. Because we cannot conclude, as a matter of law, that the Chiropractic Act authorizes chiropractors to practice acupuncture, we need not decide these alternative issues.

**CONCLUSION**

Cases construing the scope of chiropratic vis-`a-vis other healthcare fields has been a recurring theme of litigation and decisions in this Court. *See generally TMA I*, 375 S.W.3d at 464-97; *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Assoc.*, No. 03-14-00396-CV, 2014 WL 7014530 (Tex. App.—Austin Dec. 8, 2014, pet. denied) (mem. op.). What this history underscores is that the scope of chiropractic vis-`a-vis other healthcare fields is a puzzle best solved by the Legislature in a clear and precise manner, rather than leaving these policy-laden issues to the Judiciary for a determination of legislative intent from statutory language that is, to say the least, not the model of clarity. We respectfully request that the Legislature solve this problem.

For the reasons set forth in the analysis above, we conclude that the trial court did not err in denying the Acupuncture Association's motion for summary judgment and in granting the

20

Chiropractic Board's motion for summary judgment with respect to the Acupuncture Association's challenges to Rule 78.13(a)(4) and (b)(2). The trial court did err, however, in granting summary judgment in favor of the Chiropractic Board with respect to the Acupuncture Association's challenges to the validity of Rule 78.14 and to the validity of Rule 78.13(e)(2)(C). Because both the Chiropractic Board and Acupuncture Association have failed to establish entitlement to judgment as a matter of law on these claims, we reverse that portion of the trial court's judgment and remand the cause for further proceedings on this issue. We affirm the remainder of the trial court's judgment in favor of the Chiropractic Board on the Acupuncture Association's claims.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed: February 17, 2017

21