

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00035-CV

---

CARDOON, LLC, APPELLANT

V.

JBG ORGANIC HOLDINGS, LLC AND JBG ORGANIC, INC.
F/K/A JBG ORGANIC, LLC, APPELLEES

---

On Appeal from the 459th District Court
Travis County, Texas
Trial Court No. D-1-GN-22-002026, Honorable Jan Soifer, Presiding

---

August 10, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

The result in this appeal underscores the nature of the duty imposed on us by Texas Rule of Appellate Procedure 41.3. Per that rule, and because the appeal was transferred from the Third Court of Appeals to the Seventh, the former's precedent controls the outcome. TEX. R. APP. P. 41.3 (stating that in cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the

transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the transferor court's precedent); *Mitschke v. Borromeo*, 645 S.W.3d 251, 254 (Tex. 2022). Our precedent may actually contradict it, but when standing in the shoes of the Austin Court of Appeals, we must apply it. That we do here.

The debate to which we allude is between Cardoon, LLC and JBG Organic Holdings, LLC and JBG Organic, Inc. (JB). It comes to us in the form of an appeal from a final summary judgment favoring JB. And the underlying controversy involves the exercise of a contractual right of first refusal (or option) by Cardoon to repurchase about 39 acres of land it previously sold to JB. Apparently, JB contracted to sell, for one specified price, the acreage and an adjacent 146-acre tract to a third party. The third party allegedly agreed to buy both for the specified price. That the 146 acres had characteristics rendering it of lesser economic desirability (e.g., existed in a flood plain and was subject to erosion, among other things) than the 39 acres is indicated in the record. JB notified Cardoon of the impending sale per the aforementioned option agreement. Cardoon attempted to exercise the option to the original 39 acres. JB refused that and sued, contending that Cardoon had to buy both tracts. It so reasoned because the prospective buyer intended to buy both as a package deal. The trial court ultimately agreed and manifested as much via a summary judgment favoring JB. In arriving at that decision, the trial court also denied the cross-motion for summary judgment of Cardoon. Cardoon appealed. We reverse.

2

### *Determinative Issue*

Cardoon frames the "determinative issue . . . for the proper outcome of the competing motions for summary judgment" as "whether the holder of a right of first refusal can be compelled to purchase additional real property not identified in the right of first refusal, but which is being sold as part of a package deal . . . ". JB apparently agrees with this description of the issue, given its argument that "the rule as it applies today requires the ROFR [right of first refusal] holder to accept all of the terms of the offer to purchase even if that requires buying more property than contemplated." We find guidance to the answer in *Shell v. Austin Rehearsal Complex*, No. 03-97-00411-CV, 1998 Tex. App. LEXIS 5035 (Tex. App.—Austin Aug. 13, 1998, no pet.) (mem. op.) (involving a right of first refusal to lease additional space in a building owned by Shell).

There, the Third Court of Appeals said that "[t]he exercise of an option, like the acceptance of any other offer, must be positive and unequivocal." *Id.* at *24-25. A conditional acceptance "is generally considered a rejection and counteroffer." *Id.* at *25. But, conditionally accepting an "offer under an option contract is not considered an automatic rejection of that offer." *Id.* Similarly, "an acceptance is effective which is qualified merely by a condition to which the offeree would by law have been entitled if his acceptance was absolute in terms." *Id.* So too did it write:

> It has been held that if a seller imposes a term in bad faith to defeat an option, the option holder may validly exercise the option while at the same time rejecting the bad faith term; therefore, a holder of a first right of refusal has grounds to remove specific conditions from the contract, or extract other concessions as part of the agreement, if the offered contract contains certain conditions that are not commercially reasonable, are imposed in bad faith, or are specifically designed to defeat the option holder's rights.

3

*Id.* at *26. The court viewed this as an exception to the general rule about strictly accepting an offer and deigned to apply it in cases involving an option or right of first refusal. *Id.* at *28 (stating that 1) "[w]e believe the exception . . . is reasonable and applicable to the present case" and 2) "buyers should not be able to defeat a right of first refusal based on a sham"). With this in mind, we turn to the circumstances at bar.

In selling the 39 acres to JB, Cardoon included in the agreement a right of first refusal. Their agreement provided that "if at any time [JB] desire[d] to sell all or part of the Property and shall receive a bona fide offer from a third party for the purchase of all or part of the Property, then [JB] shall give Cardoon . . . written notice of the offer and proposed terms of payment and a copy of any proposal . . . or other documents that reflect or refer to the proposed sale price and terms of payment." Upon doing so, Cardoon then had "an irrevocable option for the period of 30 calendar days after receipt of the notice to give notice that it will purchase the property described on the same terms and conditions as stated in the notice . . . ." In construing this language, we must remember to do so within the context and circumstances "present when the contract was entered." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018); *Wibbenmeyer v. TechTerra Communs., Inc.*, No. 03-09-00122-CV, 2010 Tex. App. LEXIS 2203, at *12 (Tex. App.—Austin March 26, 2010 pet. denied) (mem. op.). Those circumstances did not include JB's ownership of the 146 acres adjoining the 39 sold by Cardoon; indeed, that acreage had yet to be acquired by it. So, from the words used and their context at the time, we construe the "notice" and "terms and conditions" contained therein to mean the "notice" of and "terms and conditions" pertaining to the sale of the 39 acres. By appending to the

4

sale of that land the condition to buy the other 146 acres, JB placed the debate within the scope of *Shell*.

Again, *Shell* recognizes that one holding a right of first refusal may reject specific conditions or otherwise extract other concessions if the offer contains provisions that are not commercially reasonable, are imposed in bad faith, or are designed to defeat the option holder's right. *Shell*, 1998 Tex. App. LEXIS 5035, at *26-27. Furthermore, the very authority which JB repeatedly urges us to rely upon foists the burden upon JB to prove the legitimacy of the additional terms.

The authority to which we refer is *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P.*, 301 S.W.3d 787 (Tex. App.—Fort Worth 2009, pet. denied). It involved effort to require the option holder to purchase more than the property originally contemplated in the agreement creating the option. *Id.* at 789-91. Upon thoroughly analyzing various authorities, including *Shell*, the *FWT* court decided that "as a general rule, the holder of a preferential right cannot be compelled to purchase assets beyond the scope of the agreement subject to the preferential right in order to exercise that right." *Id.* at 801; *accord*, *Hicks v. Castille*, 313 S.W.3d 874, 882 n.5 (Tex. App.—Amarillo 2010, pet. denied) (stating that generally, "the holder of a preferential right cannot be compelled to purchase assets beyond those included within the scope of the agreement subject to the preferential right in order to exercise that right"); *Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 535 (Tex. App.—Waco 2008, pet. denied) (stating that "[v]irtually every authority of which we are aware agrees that the holder of a preferential right cannot be compelled to purchase assets beyond those included within the scope of the agreement subject to the preferential right in order to exercise that right"). Yet, like many

5

rules, there was an exception. It arose when the option holder's right is expressly subject to "the same terms and conditions offered by a prospective, bona fide, third-party purchaser . . . ." *FWT*, 301 S.W.3d at 801-802. If it is, then "the question of whether the holder of a preferential right must purchase the additional assets turns on whether the condition that requires the purchase of additional assets is commercially reasonable, imposed in good faith, and not specifically designed to defeat the preferential right." *Id.*

Quick comparison between this holding in *FWT* and that in *Shell* reflects the heart of *Shell*. In other words, both afford the option holder opportunity to reject the additional conditions depending on their commercial reasonableness (or lack thereof), their good faith nature (or lack thereof), or their use (or not) as a means to thwart the option holder's right. And though *Shell* did not expressly assign the burden to address these qualifications, *FWT* did. It did so through stating that "Haskin Wallace [the property owner] met ***its*** summary judgment burden to show that Valmont's [the third party buyer] conditioning its purchase or lease of the Property on its acquisition of the assets of the galvanizing businesses was commercially reasonable, imposed in good faith, and not specifically designed to defeat FWT's preferential right."[1] *Id.* at 803 (emphasis added).

Accepting JB's suggestion to rely on *FWT*, finding that court's analysis compelling, and seeing its reliance on *Shell*, we believe it to be the course which our sister court in Austin would follow. So, for purposes of this appeal, we agree that the holder of a preferential right cannot be compelled to purchase assets beyond those encompassed in

---

[1] The two grounds upon which Haskin Wallace sought summary judgment were "(1) FWT's right of first refusal was waived or extinguished because FWT failed to tender performance in conformity with the terms and conditions of the 'Transaction,' and (2) in order to appropriately exercise the right of first refusal, FWT was required to unequivocally accept all of the terms and conditions of the 'Transaction.'" *FWT*, 301 S.W.3d at 791. They effectively mirror JB's current argument.

the original agreement.[2]  Yet, if the right is expressly subject to the same terms and conditions offered by a prospective, bona fide, third-party purchaser, the right holder must comply with those terms if commercially reasonable, imposed in good faith, and not specifically designed to defeat the preferential right.  And, the burden to illustrate as much rests with the property owner.  In applying this to the summary judgment record, we hold that JB failed to prove its entitlement to summary judgment as a matter of law.  *See Tex. Ass'n of Acupuncture & Oriental Med. v. Tex. Bd. of Chiropractic Examiners*, 524 S.W.3d 734, 738 (Tex. App.—Austin 2017, no pet.) (stating that to be the burden imposed on one seeking a traditional motion for summary judgment).

Simply put, a material question of fact exists regarding the commercial reasonableness, good faith, and purpose underlying the conditions.  The 146 acres might have amenities that the 39 acres lack.  But, the same is true of the 39 acres.  Moreover, many of the 146 acres (unlike the 39) lie in a flood plain, lack public water utilities, are subject to erosion, lack access to public roads, and may be unsuitable to build upon.  So, arguably, to reacquire its 39 acres, Cardoon is told it must also buy land of potentially lesser quality and potentially susceptible to lesser economic use.  It is not beyond the realm of reason to say these circumstances would allow a rational juror to find that the offer evinces a commercially unreasonable scheme to unload or dump property of questionably uneconomic value.  Nor can we deny that the circumstances may be reasonably indicative of a scheme to thwart Cardoon's option rights.  They could be

---

[2] JB's own arguments support this interpretation.  It claims that policy favors landowners selling their land on the terms they choose and that that policy should not only be respected, but enforced. Cardoon was no less of a landowner when deciding whether to sell the 39 acres to JB on the terms and conditions it (Cardoon) desired.  And, those terms and conditions included a clause permitting it to buy back the sole property it was selling if JB sought to transfer it to others.

7

interpreted as illustrating effort to avoid the obligation to sell 39 acres of good land by demanding that Cardoon buy 146 acres of lesser property. Or, a rational jury could exercise its right to resolve credibility issues and reject such an interpretation of the evidence. But, that is the very thing creating the material issue of fact negating JB's entitlement to judgment as a matter of law.

Nor do we accept JB's proposition that Cardoon was obligated to conditionally accept the offer "as is" while simultaneously 1) reserving the right to seek a "judicial determination of the disputed terms" or 2) initiating an actual suit to obtain that "determination." The words and structure of *Shell* lead us to that conclusion. The panel wrote that "an acceptance is effective which is qualified merely by a condition to which the offeree would by law have been entitled if his acceptance was absolute in terms." *Shell*, 1998 Tex. App. LEXIS 5035, at *25. It followed that with "[w]e construe ARC's acceptance in that way." *Id.* ARC "merely reserved the right to have a court determine the validity and enforceability of the 'permitted use' and 'terms and conditions' . . .". *Id.* at *25-26. Moreover, "ARC would have been legally entitled to seek [that determination] ***even if its acceptance had not contained the language reserving the right to do so*.**" *Id.* at *26 (emphasis added). The highlighted passage evinces that the holder of the option need not conditionally accept while simultaneously reserving the right to sue. Our view is further buttressed by what the court addressed in the ensuing paragraph. There, it 1) discussed the exception to the need for an unconditional acceptance of an offer, 2) broached the theory of how an option holder may nonetheless exercise the option by rejecting terms imposed in bad faith, and 3) observed that "the failure of the optionee to strictly comply with the terms or conditions of the option contract may be excused when

8

such a failure is brought about by the conduct of the optionor." *Id.* at *26-27. Through this structure and language, the *Shell* court was simply telling us that the option holder need not accept terms deemed objectionable. It need not accept terms 1) made in bad faith, 2) are commercially unreasonable, or 3) are designed to thwart the option holder's rights. It can reject them without expressly reserving a right to file a later suit to resolve their objectionability.[3] And, a material question of fact exists here as to whether Cardoon did that when it merely agreed to buy the 39 acres at a particular price.

Having so addressed the "determinative issue," we must sustain Cardoon's first point of error. JB failed to prove its entitlement to summary judgment as a matter of law given the presence of material questions of fact. These material issues of fact also preclude our granting Cardoon's second point of error. We cannot say Cardoon established, as a matter of law, that JB breached the option agreement by refusing to sell only the 39 acres or by appending purportedly unreasonable or legitimately objectionable terms to the offer. Indeed, if a fact finder decides that the terms were not commercially unreasonable, made in bad faith, or incorporated as a means to thwart Cardoon's option rights, then JB may well be entitled to judgment. That is something we cannot resolve on the summary judgment record before us.

Our obligation is to apply what we think the Third Court's authority demands. Whether our opinion in *Hicks*, coupled with the influence of *Navasota*, would result in a

---

[3] We do not ignore JB's reference to *Mr. W Fireworks, Inc. v. NRZ Inv. Group, LLC*, No. 08-22-00077-CV, 2023 Tex. App. LEXIS 1053 (Tex. App.—El Paso Feb. 21, 2023, pet. filed) or its suggestion that the opinion binds us. The appeal may well have involved a case transferred to the Eighth Court of Appeals from the Third Court of Appeals. And, the former may have been obligated to abide by the latter's precedent per Texas Rule of Appellate Procedure 41.3. So too may it have discussed *Shell* and observed that the option holder in *Shell* reserved the right to seek a judicial determination about the viability of the added terms. However, the *Mr. W* court did not hold that *Shell* mandated the option holder to expressly reserve the right to sue when accepting the offer. Had it so concluded, then it would have contradicted what the *Shell* panel actually said on pages 25-26 of *Shell*.

9

similar outcome if the dispute arose within the district of the Seventh Court of Appeals, we leave for another day.  Indeed, conflict posed by these different authorities is left to courts of last resort for resolution, and we invite it to intervene.  In the meantime, we "sweep around the wide step," "cut a little swath"[4] via Rule 41.3, and reverse the final summary judgment.  The cause is remanded to the trial court.


Brian Quinn
Chief Justice

---

[4] "The Sidestep," song by Charles Durning and written by Carol Hall.