# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00248-CV

---

**Texas Department of Criminal Justice, Bryan Collier, Bobby Lumpkin, and Kelly Strong, Appellants**

**v.**

**Anibal Canales and Ivan Cantu, Appellees**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-007149, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## CONCURRING AND DISSENTING OPINION

Because I conclude that Anibal Canales and Ivan Cantu (collectively, Plaintiffs) alleged valid ultra vires claims against appellees Bryan Collier, Bobby Lumpkin, and Kelly Strong (collectively, the TDCJ Officials), I respectfully dissent from the majority's decision to render judgment dismissing those claims.[1]

"Sovereign immunity generally bars lawsuits against the State absent legislative consent to be sued." *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*, 669 S.W.3d 178, 182 (Tex. 2023). Even in the absence of legislative consent, "a claim may proceed against a government official in his official capacity if the plaintiff

---

[1] I agree with the majority that Plaintiffs' claims against TDCJ itself must be dismissed. *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) ("[T]he proper defendant in an ultra vires action is the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself.").

successfully alleges that the official is engaging in ultra vires conduct." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). To fall within the ultra vires exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). An official acts "without legal authority" if he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.* (citing *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017)).

Plaintiffs allege that the TDCJ Officials violated and continue to violate the Texas Pharmacy Act; the Controlled Substances Act; the Texas Food, Drug, and Cosmetic Act; and the Texas Penal Code (collectively, the "Acts") by "procuring, possessing, distributing, and administering" compounded pentobarbital in executions. The TDCJ Officials respond that Article 43.14 of the Code of Criminal Procedure impliedly grants them the necessary authority. The central question in this case is the extent of the TDCJ Officials' authority under that statute.

Article 43.14 provides:

> Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the director of the correctional institutions division of the Texas Department of Criminal Justice.

Tex. Code Crim. Proc art. 43.14(a). As the majority notes, this statute authorizes the director of the TDCJ's criminal division to "determine[]" the protocol for carrying out execution by lethal injection by a "substance or substances" but does not require or authorize use of a particular substance. *Ante* at 8. I agree with the majority that the grant of authority to determine the

execution protocol necessarily implies the power to select the substance or substances, to procure those substances, and to store them for use. *Id.* at 9; *see San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 621 (Tex. 2020) (agencies and officials may "only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed" (citing *City of Sherman v. Public Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983))). I disagree with the majority's conclusion that Article 43.14 authorizes the TDCJ Officials to exercise these implied powers independently of the Acts. *Ante* at 10–12.

The basis for the majority's conclusion is that Article 43.14 and the Acts are not in pari materia. *Id.* The doctrine of in pari materia is a principle of statutory interpretation. *Texas Ass'n of Acupuncture & Oriental Med. v. Texas Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 744 (Tex. App.—Austin 2017, no pet.). "Statutes that are found to be in pari materia are construed together, as though they were parts of the same law, and if possible, conflicts between the statutes are harmonized." *Id.*; *see* Tex. Gov't Code § 311.026(a) (codifying common-law doctrine of in pari materia). If the statutes are in pari materia, the statutes are construed together, if possible, to give effect to both. *See* Tex. Gov't Code § 311.026(a). If two statutes are irreconcilable, "the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." *Id.* § 311.026(b).

The majority concludes that Article 43.14 and the Acts are not sufficiently similar to be in pari materia. *See In re Estate of Forister*, 421 S.W.3d 175, 180 (Tex. App.—San Antonio 2013, pet. denied) ("Statutes are in pari materia if they concern the same subject matter, relate to the same person or class of persons, or have the same object or purpose."). Specifically,

3

Article 43.14 is much narrower in scope and purpose than the Acts, which apply in a wide variety of situations and are "generally aimed at regulating medical treatment as well as protecting public health and safety." *Ante* at 10–11. But that conclusion—even if correct—does not necessarily mean Article 43.14 and the Acts operate independently. "When statutes are ostensibly conflicting but are not in pari materia, rules of statutory construction other than section 311.026(b) will dictate whether there is truly an irreconcilable conflict and, if so, which statute controls." *Texas State Bd. of Chiropractic Exam'rs v. Abbott*, 391 S.W.3d 343, 350 (Tex. App.—Austin 2013, no pet.). One of those rules is that courts are to attempt to harmonize overlapping statutes if possible. *Harris Cnty. Appraisal Dist. v. Texas Workforce Comm'n*, 519 S.W.3d 113, 122 (Tex. 2017) (holding that if two statutes seem to be in conflict, "we will construe the different provisions in a way that harmonizes rather than conflicts").

The Acts each regulate some aspect of procuring, possessing, distributing, or administering a drug and each defines the term in part as a "substance," other than food, that is intended to affect the structure or a function of the human body.[2] *See* Tex. Occ. Code § 551.003(18)(C); Tex. Health & Safety Code § 481.002(16); Tex. Penal Code § 1.07(12). The legislature presumably selected the wording of these definitions with care and with full awareness that article 43.14 specifies injection with a "substance or substances" as the method of execution. *See Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 616 S.W.3d 558, 577 (Tex. 2021) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." (internal quotation marks omitted)); *C.M.C.*

---

[2] The Food, Drug, and Cosmetics Act defines a drug as "articles," rather than substances, "other than food, intended to affect the structure or any function of the body of man or other animals." Tex. Health & Safety Code § 431.002(14). There is, however, no dispute that the plain meaning of "substance" includes an "article" as the FDCA uses that term.

*v. Texas Dep't of Fam. & Protective Servs.*, ___ S.W.3d. ___, ___, No. 01-22-00965-CV, 2024 WL 86411, at *6 (Tex. App.—Houston [1st Dist.] Jan. 9, 2024, pet. filed) ("[W]e presume the legislature had full knowledge of existing law, including rules, statutes, and caselaw, at the time of enactment and intended the statute to coexist with existing law.").

The next question is whether it is possible to give effect to both Article 43.14 and the Acts. The Food, Drug, and Cosmetics Act (FDCA) prohibits "the introduction or delivery for introduction into commerce" or the "receipt in commerce" of "any food, drug, device, or cosmetic that is adulterated or misbranded." Tex. Health & Safety Code § 431.021(a), (c). This prohibition includes a prescription requirement. Specifically, a "drug intended for use by man" that is either (1) "not safe for use except under the supervision of a practitioner licensed by law to administer such drug" or (2) that the federal Food, Drug, and Cosmetics Act ("Federal Act") limits to use under supervision of a licensed practitioner, "shall be dispensed only . . . on a written prescription of a practitioner licensed by law to administer such drug[.]" *Id.* § 431.113(c)(1)(A)–(B)(i). A drug that meets these criteria and is dispensed without a prescription is deemed misbranded. *Id.* § 431.113(c)(1)(B)(iii).

The TDCJ Officials argue that the FDCA does not apply to their conduct for two reasons.[3] First, they argue that the FDCA is limited to drugs intended for a medical purpose because a medical provider must have a medical purpose to write a prescription. But Section 431.113 requires a prescription to dispense medications that meet certain criteria, none of which pertain to the intended use of the substance. *See generally* Tex. Health & Safety Code § 431.113(c). I see no basis for exempting compounded pentobarbital from the prescription

---

[3] TDCJ Officials do not dispute that they obtained—and continue to obtain—compounded pentobarbital without a prescription.

5

requirement when it meets the express statutory criteria. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 (Tex. 2019) (orig. proceeding) ("It is not our place to 'judicially amend the statute to add an exception not implicitly contained in the language of the statute.'" (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999))).

Applying the FDCA to lethal injection drugs is consistent with its purpose. Although this appears to be a question of first impression regarding the Texas FDCA, it is not under the Federal Act.[4] *Chaney v. Heckler*, 718 F.2d 1174, 1179–82 (D.C. Cir. 1983), *rev'd on other grounds*, 470 U.S. 821 (1985). The dissent in that case argued that the Federal Act did not apply to the prison officials ordering the drugs because the officials—and not the inmates—were the ultimate consumers of the execution drugs and thus beyond the reach of the Federal Act. *Id.* at 1182. The majority disagreed, explaining that the "ultimate purpose" of prohibiting the sale of misbranded drugs is "protection of those who consume drugs from the potential harm of misbranding by anyone in the chain of distribution." *Id.* A prisoner awaiting execution "might be an unwilling consumer," but that "does not change the fact that the prisoner is the one who will suffer an excruciating death if this unapproved administration [of drugs] is conducted improperly." *Id.* The D.C. Circuit continues to follow this portion of *Chaney's* reasoning. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 136 (D.C. Cir. 2020) (per curiam) (applying *Chaney*); *Cook v. Food & Drug Admin.*, 733 F.3d 1, 7–11 (D.C. Cir. 2013) (applying Federal Act to import of lethal injection drug).

---

[4] I consult decisions interpreting the Federal Act because it includes analogous statutory language. *See* 21 U.S.C. §§ 331(a) (prohibiting introduction into commerce or receipt of a misbranded drug), 353(b) (deeming prescription drug dispensed without prescription to be misbranded); *see also Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 68 (Tex. 2019) ("We have utilized comparable federal law as guidance in situations where our state statute and the federal law contain analogous statutory language.").

I would construe the FDCA and Article 43.14 together and, guided by *Chaney*, conclude that the FDCA applies to the procurement and storage of lethal injection drugs by the TDCJ Officials.[5] *See Dyer v. Texas Comm'n on Env't. Quality,* 646 S.W.3d 498, 511 (Tex. 2022) ("[W]e favor concurrent operation of overlapping statutes."). I reach the same conclusion with respect to the other statutes for essentially the same reasons: each statute applies by its terms to compounded pentobarbital and it is possible to apply those statutes without leading to an absurd result. I would therefore affirm the district court's denial of the plea to the jurisdiction as to the claims against the TDCJ Officials.

For these reasons, I concur in part and respectfully dissent in part.[6]

---

[5] This conclusion does not, as the TDCJ Officials suggest, lead to an absurd result. "To be absurd in the legal sense, a result must be more than merely odd, 'unintended,' 'improvident,' or even 'inequitable,'" it "must be 'unthinkable or unfathomable.'" *In re T.V.T.*, 675 S.W.3d 303, 309 (Tex. 2023) (per curiam) (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013)). TDCJ Officials argue that an interpretation that leads to "blocking access to lethal-injection drugs" is absurd because it makes "the death penalty practically impossible to administer." But applying the FDCA at most narrows the universe of substances available for use in an execution. Even if this result would seem "odd" or "unintentional," there is nothing unthinkable or unfathomable in directing officials to carry out executions by injection of a "substance or substances" while also requiring those officials to comply with laws applicable to those substances. *See Combs*, 401 S.W.3d at 630 ("The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity."). On this record, I cannot conclude that applying the FDCA would lead to an absurd result.

[6] The majority notes in closing that its decision does not mean "that there is no limitation on TDCJ officials in their treatment of death-row inmates and administration of lethal injections" and that review in federal court may be available. *Ante* at 13. The majority also points out that Plaintiffs did not allege a violation of article 43.14 of the Code of Criminal Procedure, which provides that "No torture, or ill treatment, or unnecessary pain, shall be inflicted upon a prisoner to be executed under the sentence of the law." *Id.* at 13–14 (citing Tex. Code Crim. Proc. art. 43.24). I note that the Court of Criminal Appeals has already held that an inmate may not challenge the constitutionality of the State's planned method of execution in a writ of habeas corpus. *Ex parte Alba*, 256 S.W.3d 682, 683–84 (Tex. Crim. App. 2008). Today's decision further narrows the available avenues in state court. *See Ex parte Chi*, 256 S.W.3d 702, 714 n.43 (Tex. Crim. App. 2008) (Price, J., dissenting) ("Because this Court refuses to exercise habeas corpus jurisdiction, and because the civil courts cannot enjoin executions even if they can

7

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Filed:   July 12, 2024

---

entertain challenges to the lethal-injection protocol, dozens, perhaps even scores, of death-row inmates may eventually be executed before the matter could be resolved on the civil side of the docket.")